**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action Number: 1:23-cv-01789-NYW-STV


MOHAMED RAGAB,

      Plaintiff,

v.

ISPACE INC., a Japanese Corporation, ISPACE TECHNOLOGIES U.S., INC., a Delaware
Corporation., TAKESHI HAKAMADA, a Japanese citizen, JUMPEI NOZAKI, a Japanese
Citizen and RYO UJIIE,  a Japanese Citizen.

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)**

---

Defendants ispace, inc., ispace technologies U.S., inc. ("ispace U.S."), Takeshi Hakamada, Jumpei Nozaki, and Ryo Ujiie respectfully submit this *Motion to Dismiss for Lack of Subject Matter Jurisdiction, Insufficient Service of Process, Lack of Personal Jurisdiction, Forum Non Conviens, and Failure to State a Claim.*[1]

## I.        Introduction and Summary of the Argument

The amended complaint should be dismissed for essentially every reason listed in Fed. R. Civ. P. 12(b). The court lacks subject matter jurisdiction, because the two federal claims are plainly insubstantial. *See* Fed. R. Civ. P. 12(b)(1). The Court lacks personal jurisdiction over the four defendants who are citizens and residents of the nation of Japan (defendants ispace, inc., and Messrs. Takeshi Hakamada, Jumpei Nozaki, and Ryo Ujiie), because the purported service on them was improper, and those defendants lack sufficient minimum contacts with Colorado. *See* Fed. R. Civ. P. 12(b)(2),(5). The court is not the proper forum for this case, because the employment and stock option agreements on which the plaintiff relies make Tokyo District Court in Japan the exclusive forum for plaintiff's disputes. Finally, the complaint fails to state a claim under Rule 12(b)(6).

## II.       Argument

### A.  The Court Lacks Subject Matter Jurisdiction

The original complaint alleged subject matter jurisdiction based on diversity jurisdiction. *See* Doc. No. 1. After the Court issued a jurisdictional order to show cause, *see* Doc. No. 12, the plaintiff amended the complaint. *See* Doc. No. 13. The amended complaint alleged federal question jurisdiction, based on two putative federal claims. Those claims, however, are "so

---

[1] Pursuant to Civ. Practice Standard 7.1B(b), undersigned counsel conferred with plaintiff's counsel with respect to the relief sought by this motion. This motion is opposed.

insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) (cleaned up); *Guinn v. Farmers Ins. Co.*, 563 Fed. Appx. 653, 654 (10th Cir. 2014).

The first federal "claim" is for violation of the criminal wire fraud statute, 18 U.S.C. § 1343. *See* Doc. No. 13, ¶¶ 150-160. No private right of action exists under that criminal statute. *See, e.g., Goode v. Gaia, Inc.*, 2022 WL 596292, * 9 (D. Colo. 2022) (report and recommendation) (collecting cases), *adopted sub nom Goode v. Zavodnick*, 2023 WL 3568126, * 4 (D. Colo. 2023); *Farmer v. Law Office of Weiner & Weiner*, 2020 WL 6530882, * 3 (S.D.N.Y. 2020); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 407-09 (8th Cir. 1999). This claim is "so insubstantial," "implausible," and "completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89.

The second claim is for national origin discrimination under 42 U.S.C. § 2000e-2. *See* Doc. No. 13, ¶¶ 161-166. Although this statute has a private right of action, it does not apply to the "foreign operations of an employer that is a foreign person not controlled by an American employer." *See* 42 U.S.C.A. § 2000e–1(c); *see Russell v. Midwest–Werner & Pfleiderer, Inc.,* 955 F.Supp. 114, 115 (D.Kan.1997) ("Title VII applies only to American citizens employed abroad by American companies or their foreign subsidiaries."). ispace, inc. is a foreign corporation. *See* Doc. No. 13, ¶ 2. The amended complaint does not allege that ispace, inc. is a subsidiary of, or controlled by, an American company.

Title VII also has mandatory timing and procedural requirements that were plainly violated here, making the claim so "insubstantial," "implausible," and "completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89.

The amended complaint alleges that, based on his national origin (American), plaintiff "suffered from adverse employment actions, including undesirable job assignments, and ultimately was terminated from the company." *See* Doc. No. 13, ¶¶ 165, 72-73. The amended complaint alleges that his firing was "effective March 31, 2020." *Id.*, ¶ 72.

A person claiming to be aggrieved under 42 U.S.C. § 2000e-2 must file a charge of discrimination with the EEOC within 300 days after the "alleged unlawful employment practice occurs." *See* 42 U.S.C. § 2000e-5(c); *Fort Bend County v. Davis*, 139 S.Ct. 1843, 1846 (2019). Accordingly, the plaintiff had to file a charge with the EEOC by January 25, 2021. The amended complaint, however, says nothing about filing an EEOC charge. *See generally* Doc. No. 13.

If the plaintiff did timely file a charge, he would have received a right-to-sue letter no later than July 26, 2021, and would have had to sue by Monday, October 25, 2021. *See Fort Bend County*, 139 S.Ct. at 1846-47. The amended complaint, however, was not filed until August 10, 2023 – roughly twenty-two months too late.

The EEOC process is mandatory, and the court must dismiss the claims of a plaintiff who fails to follow it, once the failure is pointed out. *Fort Bend*, 139 S.Ct. at 1851-52. Given the complaint's silence about the EEOC process, two options are possible. First, the plaintiff never invoked the EEOC process, which bars his claim. Second, the plaintiff invoked the EEOC process, but his time to sue has long since passed. Without any plausible allegations to show that the plaintiff complied with the timing and procedural requirements of this claim, this claim is "so insubstantial," "implausible," and "completely devoid of merit as not to involve a federal

controversy." *Steel Co.*, 523 U.S. at 89.[2]  The court should dismiss the amended complaint under Fed.R.Civ.P. 12(b)(1).

### B.  The Court Lacks Personal Jurisdiction Over the Four Japanese Defendants, For Insufficient Service and Lack of Contacts

The court also lacks personal jurisdiction over the four Japanese defendants. The purported service on them was insufficient and improper and violated their rights under the Hague Convention. Moreover, even if service were proper, the Japanese defendants lack sufficient minimum contacts with Colorado.

### 1.  The "Service" on the Japanese Defendants Was Improper

Proper service of a summons is required before a court can exercise personal jurisdiction over a defendant. *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  The plaintiff must show that service was proper. 4A Wright & Miller, *Federal Practice and Procedure* § 1083 (4th ed.) ("The party on whose behalf service of process is made has the burden of establishing its validity when challenged[.]").

For defendants in Japan, the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") provides the method of proper service. *See* Fed. R. Civ. P. 4(h)(1); *Froland v. Yamaha Motor Co., Ltd.*, 296 F.Supp.2d 1004, 1007-08 (D. Minn. 2003). Japan requires that foreign legal documents be translated into Japanese before service. *See* 296 F. Supp. 2d at 1008 ("The central authority may require that documents be translated into an official language" of that state [and] "Japan requires that service of process be made via the Central Authority, in the Japanese language.")

---

[2] Alternatively, the Court may simply dismiss this claim under Rule 12(b)(6) and, given its insubstantial nature and the fact it was obviously an afterthought added to try to remain in federal court, relinquish supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. 1367(c).

Instead of following the Hague Convention, the plaintiff "served" the individual Japanese defendants with English-language documents at the office of defendant ispace U.S. The returns of service for those defendants (Messrs. Takeshi Hakamada, Jumpei Nozaki, and Ryo Ujiie) state that they were served through "substitute service" at their "usual place of employment," which is claimed to be an office in Centennial, Colorado. *See* Doc. Nos. 15, 18-19. Apparently, the plaintiff claims that service is proper under Fed. R. Civ. P. 4(e)(1), which allows service on an individual as provided by state law, because state law provides that an individual may be served by "leaving a copy" at "the person's usual workplace[.]" *See* C.R.C.P. 4(e)(1).

But Centennial, Colorado is not the individual defendants' "usual workplace." The amended complaint itself alleges that each of them is "employed at Sumitomo Fudosan Hamacho Building 3F, 3-42-3, Nihombashi Hamacho, Chuo-ku, Tokyo, Japan 103-0007." *See* Doc. No. 13, ¶¶ 4-6; *see also* Ex. 1, Declaration of Ronald J. Garan Jr.,  (stating that none of the individual defendant's usual workplace is the Centennial, Colorado office). Accordingly, this service was improper under C.R.C.P. 4(e)(1), and therefore improper under Fed.R.Civ.P. 4(e)(1).[3]

The "service" on ispace, inc. was also improper. ispace, inc. is a "Japanese common stock corporation with its headquarters at Sumitomo Fudosan Hamacho Building 3F, 3-42-3, Nihombashi Hamacho, Chuo-ku, Tokyo, Japan 103-0007." *See* Doc. No. 13, ¶ 2. The return of service claims that ispace, inc. was served by "handing" the summons to "CEO Ron J. Garan Jr." *See* Doc. No. 16.

Ron J. Garan Jr. is not the CEO of ispace, inc. He is the CEO of ispace U.S., but not an officer, managing agent, or general agent of ispace, inc., or otherwise authorized by appointment

---

[3] The Court may consider evidence on a Rule 12(b)(5) motion, without converting the motion. *Fisher v. Lynch*¸ 531 F.Supp.2d 1253, 1260 (D. Kan. 2008).

or by law to receive process for ispace, inc. *See* Fed.R.Civ.P. 4(h); C.R.C.P. 4(e)(4); Ex. 1. Neither federal nor Colorado law allows a foreign parent corporation to be properly served by "handing" a summons to the CEO of a legally separate, domestic subsidiary corporation. *See* Fed.R.Civ.P. 4(h)(1)(A)-(B) (providing methods to serve a corporation); C.R.C.P. 4(e)(4) (requiring that a corporation be served by delivering summons to the registered agent or an officer of the corporation).

### 2. The Japanese Defendants Lack Sufficient Minimum Contacts With the State of Colorado

The plaintiff bears "the burden of establishing personal jurisdiction." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022). The plaintiff must make a prima facie showing of personal jurisdiction, with respect to each defendant, through the complaint's well-pleaded allegations or other evidence. *Eighteen Seventy*, 32 F.4th at 964-65; *Gould v. Wyse*, 2023 WL 4994511, * 2 (10th Cir. August 4, 2023) (holding that "the personal jurisdiction requirements must be met as to each defendant") (cleaned up). For a prima facie showing to exist, the complaint must show that each defendant "has the requisite minimum contacts with the forum state[.]" *Eighteen Seventy*, 34 F.4th at 965. The amended complaint fails to make that showing.

For defendant Takeshi Hakamada, the amended complaint alleges two contacts with Colorado: a visit to non-party United Launch Alliance's "headquarters in Centennial, Colorado in April 2016," *see* Doc. No. 13, ¶ 20, and supposedly becoming "CEO of Defendant ispace U.S." in June, 2022. The complaint does not allege that the plaintiff's claims arise from that 2016 visit, or from Takeshi Hakamada's assuming the CEO position in June 2022. The rest of the amended complaint, when it mentions defendant Takeshi Hakamada, does not allege that either he or the plaintiff were in Colorado. *Id.*, ¶¶ 24, 30-31, 41-43, 46, 53, 55-60, 62-67. This is not surprising, because the plaintiff's employment agreements specified that he would work in

Japan. *See* Ex. 2, Employment Agreement Between ispace, inc. and Mohamed Ragab, dated July 26, 2016, Article 3(1)("The Employee shall be employed by the Company in the position of Vice President of Spacecraft Development at Tokyo Japan."); Ex. 3, Employment Agreement Between ispace, inc. and Mohamed Ragab, dated January 31, 2019), Preamble (noting that Ragab "ha[s] his residence at 5-18-17-1102, Roppongi, Minato-ku, Tokyo"); Article 6(1) ("The employee shall live in company apartment").[4]

For defendant Jumpei Nozaki, the amended complaint alleges no contacts with Colorado. *See generally* Doc. No. 13. In fact, the complaint barely mentions him at all. *See id.*, ¶¶ 55, 60-61, 125. The same is true for defendant Ryo Ujiie: the amended complaint alleges no contacts with Colorado, *see generally id.*, and hardly mentions him. *Id.*, ¶¶ 54, 126.

For defendant ispace, inc., the amended complaint does not allege any Colorado contacts, other than a June 2016 meeting between Kyle Acierno, who was "an employee of ispace," and the plaintiff at the "School of Mines in Golden, Colorado." *See* Doc. No. 13, ¶¶ 19, 21. The complaint alleges that plaintiff "interviewed for [a] position" after that meeting, *see id.*, ¶ 22, but it does not allege where the interview was, or with whom. Nor does the complaint allege that the plaintiff's claims arise from the June 2016 meeting.

These allegations are not sufficient for personal jurisdiction. Although the plaintiff alleges that he resides in Colorado and received his dismissal notice in Colorado, *see* Doc. No. 13, ¶¶ 1, 152, "a plaintiff's contacts with the defendant and forum cannot drive the jurisdictional analysis." *Eighteen Seventy*, 32 F.4th at 969 (cleaned up); *Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014). Instead, the

---

[4] Because the amended complaint refers to these agreements, the Court may consider them without converting the motion. *Driskell v. Thompson¸* 971 F.Supp.2d 1050, 1057 n. 8 (D. Colo. 2013).

"defendant's conduct must connect him with the forum in some meaningful way." *Eighteen Seventy*, 32 F.4th at 969. For the Japanese defendants, the amended complaint alleges no, or barely any, contact with Colorado.

### C. The Forum Selection Clause Requires That the Case Be Dismissed

The employment and stock option agreements between ispace, inc. and the plaintiff have forum selection clause that specify the Tokyo District Court as the exclusive forum for "[a]ny and all disputes between the parties arising in connection with" the agreements. *See* Ex. 2, Article 11; Ex. 3, Article 11; Ex. 4 (Agreement for First Issuance of Stock Option), Article 14 ("All disputes and litigation arising out of or related to this Agreement will be subject to the exclusive jurisdiction of the Tokyo District Court."): Ex. 5 (Stock Option Agreement), Article 15.

These forum selection provisions require dismissal based on *forum non conveniens*. *See Atlantic Marine Constr. Co., Inc. v. USDC*¸ 571 U.S. 49, 60, 66 n. 8 (2013) ("the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."). A "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.*, at 63. When a forum selection clause exists, the "private interest factors" are "deem[ed] to weigh entirely in favor of the preselected forum," and only the "public interest factors" can prevent dismissal in "unusual cases." *Id.*, at 64.

This is not the "unusual case" where the "public interest factors" weigh against dismissal. Those factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of

a diversity case in a forum that is at home with the law." *Atlantic Marine*, 571 U.S. at 62 n. 6 (citation and quotation omitted; alteration in original).

This is not a "localized controversy": it is a lawsuit against a Japanese employer, brought by an employee who worked in Japan, involving employment and stock option agreements governed by Japanese law. *See* Ex. 2, Article 11 ("This Agreement shall be governed by and construed in accordance with the laws of Japan."): Ex. 3, Article 11 (same); Ex. 4, Article 14 ("This Agreement shall be governed by and construed under the laws of Japan."): Ex. 5, Article 15. The sole local defendant – ispace U.S. – faces no substantive allegations in the complaint, as explained below. Nor is this a "diversity case." *See* Doc. No. 13. And nothing in the record shows that "court congestion" in Japan is so serious that plaintiff can avoid the forum selection clause. *See U.S.O. Corp. v. Mizuho Holding Co.* 547 F.3d 749, 750-51, 754 (7th Cir. 2008). The court should enforce the forum selection clause by dismissing this case based on *forum non conveniens*. *Atlantic Marine*, 571 U.S. at 66 n. 8.

### D.  The Statutes of Limitations Bar Plaintiff's Claims

Courts may resolve statute of limitations issues under Rule 12(b)(6) "when a complaint indicates on its face that the statute of limitations has expired." *Cayo, Inc. v. Swiss Reinsurance Am. Corp.*, 2023 WL 4744196, at *4 (D. Colo. May 2, 2023). Plaintiff's first nine claims are barred by the statute of limitations.

A three-year statute of limitations applies to Plaintiff's claims for breach of contract (first claim), promissory estoppel (second claim), breach of duty of good faith and fair dealing (third claim), fraud (fifth claim), unjust enrichment (seventh claim), quantum meruit (eighth claim), and breach of fiduciary duty (ninth claim). *See* C.R.S. § 13-80-101(1)(a), (c), (f); *see also Cayo, Inc.*, 2023 WL 4744196, at *4, 8, 10; *Voodoo Leatherworks LLC v. Waste Connections US, Inc.*,

618 F. Supp. 3d 1126, 1136-37 (D. Colo. 2022). Plaintiff's civil theft claim (fourth claim) is subject to a two-year statute of limitations. Finally, Plaintiff's civil conspiracy claims (sixth claim), based on underlying fraud and civil theft claims, *See* Doc. No. 13 at 21, ¶ 127, could be subject to either the three or the two-year statute of limitations. *Wilson v. Pauling*, 457 F. Supp. 3d 965, 977 (D. Colo. 2020).  Since Plaintiff filed his complaint on July 13, 2023, *see* Doc. No. 1, to be timely these claims must have accrued after July 13, 2020, and in some cases July 13, 2021.

Plaintiff's claims arise from the same basic facts: alleged promises and failures to issue plaintiff's stock options within one year of employment (*see id.* ¶¶ 24, 27, 28, 30, 32, 46, 47, 89, 90, 93, 96, 106, 118), to issue stock options during the second issuance (*see id.* ¶¶ 31, 40, 42, 43, 45, 46, 47, 90, 93, 106, 118,119, 120), and to allow plaintiff to exercise his stock options. *See id.* ¶¶ 36, 37, 45, 92, 106, 111-112, 118, 132, 133. It was reasonably obvious to plaintiff, on July 26, 2017, that defendants had not issued his stock options. *See id.* ¶¶ 24, 27, 28, 89. Similarly, on May 30, 2018, the Stock Option Agreement notified plaintiff that remaining stock options were being issued during the third issuance. *See id.* ¶ 45; Ex. 5 (Agreement for Third Issuance of Stock Option, preamble). Accordingly, plaintiff knew on May 30, 2018, that defendants had not issued stock options to plaintiff during the second issuance. The amended complaint also establishes that plaintiff understood before July 13, 2020, that defendants would not allow plaintiff to exercise his stock options. It is evident from plaintiff's letter to ispace, inc. that plaintiff knew about restrictions to exercising his stock options as of December 10, 2019. *See* Doc. No. 13 at 12, ¶ 68. Plaintiff further admits that on April 17, 2020, he received notice that ispace, inc. would not allow him to exercise his stock options. *See id.*, at 13 ¶ 75. Finally, the amended complaint shows that on June 4, 2020, plaintiff believed ispace, inc. should

be "held responsible" for preventing plaintiff from exercising his stock options. *See id.*, at 14, ¶ 76 ("The letter noted that they will be held responsible[.]"). The amended complaint shows that plaintiff's first nine claims all accrued before July 13, 2020, and thus should be dismissed as untimely.

### E.  The Complaint Fails to State a Plausible Claim Under Rule 12(b)(6)

As an initial matter, the amended complaint lumps the five defendants together without sufficiently alleging their separate acts allegedly leading to liability. Plaintiff's repeated references to "Defendants" as an "undifferentiated group are patently insufficient to overcome a motion to dismiss," and violate the pleading requirements of Rule 8 and the particularity required by Rule 9(b). *Goodwin v. Bruggeman-Hatch*, 2014 WL 3882183, at *1 (D. Colo. Aug. 7, 2014). "'The complaint must make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations.'" *Id.* (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "For this reason, 'group pleading' is insufficient to state a plausible claim implicating a particular defendant." *Id.* Here, the minimal allegations that do specifically relate to a defendant do not, singularly or together, plausibly state a cause of action against that defendant.

#### 1.  Plaintiff Has Failed to State a Plausible Breach of Contract Claim Against ispace U.S., Hakamada, Nozaki, and Ujiie

Plaintiff fails to identify a contract between him and ispace U.S., Takeshi Hakamada, Jumpei Nozaki, or Ryo Ujiie. *See* Doc. No. 13, ¶¶ 88-94. Instead, the amended complaint vaguely alleges that "Defendants have breached . . . their obligations under their agreements with plaintiff." *Id.*, ¶ 92. By contrast, the amended complaint specifically alleges the existence of two contracts between only plaintiff and ispace, inc. *See id.*, ¶ 88. Without an underlying contract, plaintiff cannot establish a breach of contract claim against ispace U.S., Takeshi Hakamada,

Jumpei Nozaki, or Ryo Ujiie breached a contractual provision. *See Willis v. Dep't Stores Nat. Bank*, 613 F. App'x 755, 757 (10th Cir. 2015) (dismissing breach-of-contract claim for failure to identify a contractual promise that was breached or any action by Defendants that constituted a breach).

## 2.  Plaintiff Has Failed to State a Promissory Estoppel Claim.

Plaintiff similarly fails to identify a promise made by ispace U.S., ispace, inc., Takeshi Hakamada, Jumpei Nozaki, or Ryo Ujiie sufficient to invoke promissory estoppel. *See* Doc. No. 13, ¶¶ 95-102. Again, plaintiff alleges that "Defendants made promises to plaintiff that granted him stock options" and that "defendants further promised that plaintiff would be able to exercise his stock options at varying points of time." *Id.*, ¶¶ 96-97. Plaintiff's conclusory and vague allegations and impermissible group pleading do not suffice. *See L5L Industries,* 2022 WL 704705, at *2-3 (eliminating group-pleaded allegations as conclusory). Plaintiff does not identify a specific promise that was made or who made it, and consequently does not state a claim for promissory estoppel. *See Carnation Bldg. Servs., Inc. v. City & Cty. of Denver*, 2011 WL 6940474, at *9 (D. Colo. Dec. 29, 2011) (dismissing promissory estoppel claim where complaint failed to identify "what specific promises were made, when such promises were made, or which particular defendant made such promises").

## 3.  Plaintiff Has Failed to State a Plausible Breach of Good Faith and Fair Dealing or a Plausible Breach of Fiduciary Duty.

As shown above, plaintiff does not plausibly allege the existence of a contract between himself and ispace U.S., Takeshi Hakamada, Jumpei Nozaki, or Ryo Ujiie. Plaintiff, therefore, cannot plausibly allege a breach of the covenant of good faith and fair dealing claim or a breach of fiduciary duty claim against ispace U.S., Takeshi Hakamada, Jumpei Nozaki, or Ryo Ujiie. Doc. No. 13, ¶¶ 143-144 (alleging stock option agreement created "defendants" fiduciary duty);

*Kirkland v. Robert W. Baird & Co., Inc.*, 2020 WL 1452165, at *11 (D. Colo. Mar. 25, 2020) (requiring the existence of a contract). If anything, the plaintiff would owe a fiduciary duty to ispace inc., not the other way around. *See Jet Courier Serv., Inc. v. Mulei¸* 771 P.2d 486, 492 (Colo. 1989).

### 4.   Plaintiff Has Failed to State a Plausible Civil Theft Claim.

The complaint fails to plausibly allege that Colorado's civil theft statute, C.R.S. § 18-4-405, applies to claims against Japanese defendants, arising from conduct that occurred while the plaintiff lived and worked in Japan and arising from the supposed breach of a Japanese-law-governed contracts.

Colorado would not apply its statutory civil theft claim to the facts alleged. *See* Colo. Rev. Stat. § 18-1-201 (setting territorial limits). ispace, inc. is a Japanese corporation with its headquarters in Tokyo, Japan. *See* Doc. No. 13, ¶ 2. Defendants Takeshi Hakamada and Jumpei Nozaki are Japanese citizens and directors of ispace, inc. in Tokyo, Japan, and Ryo Ujiie is a Japanese citizen employed in Tokyo, Japan. *Id.*, ¶¶ 4-6, caption. Plaintiff lived and worked in Japan. *See id.*, ¶ 26; *see also* Ex. 2, Article 3(1), Article 6(1); Ex. 3, Preamble, Article 6(1). Plaintiff does not allege the supposed "theft" occurred in Colorado. *See generally* Doc. No. 13. Nor does plaintiff allege that any of the "stolen" property was located in Colorado. *See generally id.* Accordingly, Colorado's civil theft statute does not apply to ispace, inc., Takeshi Hakamada, Jumpei Nozaki, or Ryo Ujiie. *See* Colo. Rev. Stat. § 18-1-201.

Plaintiff's civil theft claim again relies on conclusory allegations and group pleading to support vague allegations of wrongdoing. *See* Doc. No. 13, ¶¶ 111, 113-116. Plaintiff does not allege that Takeshi Hakamada, Jumpei Nozaki, or Ryo Ujiie, or ispace U.S. knowingly exercised control over Plaintiff's stock options or allege that they knew the control was without authorization. *See* Doc. No. 13, ¶¶ 108-116.

**5.  Plaintiff Has Failed to State a Plausible Civil Conspiracy Claim.**

For a civil conspiracy claim under Colorado law, a plaintiff must show that the conspiracy involves: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Scott v. Hern*, 216 F.3d 897, 918 (10th Cir. 2000) (quoting *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995)).

Plaintiff's civil conspiracy claim fails because the various defendants cannot legally "conspire" with each other. "A corporation and its employees do not constitute the 'two or more persons' required for a civil conspiracy, at least if the employees are acting on behalf of the corporation and not as individuals for their individual advantage." *Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1390 (Colo.App.1986) (internal citations omitted). Here, the wrongful actions alleged to have been taken by individual defendants were taken in their capacities as employees or agents of ispace Inc. or ispace U.S., not for their individual advantage. Accordingly, dismissal of the conspiracy claim against Hakamada, Nozaki, and Ujiie is appropriate.

The amended complaint does not provide facts to show a meeting of the minds between ispace U.S. and ispace, inc. "A meeting of the minds cannot be inferred from the 'mere fact that [ispace U.S. and ispace, inc.] came into contact' through joint ownership." *Payment Brokers Group, LLC v. Agentra, LLC*, 2021 WL 5200207, at *6 (D. Colo. Nov. 9, 2021) (quoting *Hern*, 216 F.3d at 918). Nor can a corporation conspire with a wholly-owned subsidiary. *Davidson & Shaaff v. Liberty Nat. Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995). As such, dismissal of the conspiracy claim against ispace U.S. and ispace Inc. is also appropriate.

**6.  Plaintiff Has Failed to State a Plausible Unjust Enrichment Claim.**

To state a claim for unjust enrichment, plaintiff must plausibly allege that: (1) defendants received a benefit, (2) at the expense of plaintiff, and (3) under the circumstances it would be unjust for defendants to retain the benefit without compensation to plaintiff. *DTC Energy Grp., Inc. v. Hirschfield*, 420 F. Supp. 3d 1163, 1178 (D. Colo. 2019).

To support this claim, plaintiff alleges he "provided services to Defendants consistent with the Agreements." Doc. No. 13, ¶ 131. However, "[a] party generally cannot recover for unjust enrichment . . . where there is an express contract addressing the subject of the alleged obligation to pay." *McAuliffe v. The Vail Corporation*, 69 F.4th 1130, 1153 (10th Cir. 2023) (Colorado law; citation and quotation omitted). Services provided "consistent with the Agreements" do not support an unjust enrichment claim. *Id.*¸ at 1153.

### 7. Plaintiff's Quantum Meruit Claim Should Be Dismissed As Duplicative.

Plaintiff's quantum meruit claim should be dismissed as duplicative. Colorado precedent makes clear that quantum meruit is the same form of relief as unjust enrichment. *See Dudding v. Norton Frickey & Associates,* 11 P.3d 441, 444 (Colo. 2000) (cited with approval *Whitus v. Venegas*, 2023 WL 2266554, at *7 (D. Colo. Feb. 28, 2023) (dismissing quantum meruit claim)). Because Plaintiff's quantum meruit and unjust enrichment claims assert the same cause of action, and are both barred for the same reason, they may be dismissed.

### III.   Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss the amended complaint.

Respectfully submitted this 5th day of September, 2023.

s/ Michael Hofmann
Michael Hofmann
Brenna Wolcott
BRYAN CAVE LEIGHTON PAISNER LLP
1700 Lincoln Street, Suite 4100
Denver, CO  80203
Telephone: 303-861-7000
michael.hofmann@bclplaw.com
brenna.wolcott@bclplaw.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September, 2023, the foregoing document was filed with the Clerk of Court using CM/ECF, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

s/ Michael Hofmann
Michael Hofmann