# ISPACE

## AGREEMENT FOR 1st ISSUE OF STOCK OPTION

This Agreement for the 1st Issue of Stock Option (this "Agreement") is made as of October    , 2017, by and between ispace, inc., a Japanese joint stock corporation (*kabushiki kaisha*) (the "Company") and Mohamed Ragab (the "Subscriber") with respect to the stock option (*shinkabu yoyakuken*) (the "Stock Option") previously agreed to be issued to the Subscriber pursuant to his employment contract dated July 26, 2016 and the resolution of the Company's shareholders meeting held on October    , 2017 and the board of directors meeting held on October    , 2017 (the "BOD Resolution") and Articles 236, 238 and 239 of the Companies Act of Japan.  Each of the Company and the Subscriber is referred to as a "Party" and collectively as the "Parties".

1. **Allotment of Stock Options.**

    1.1. In response to the submission of the application to the Company by the Subscriber with the application form of the stock option dated October    , 2017, the Company shall issue 12,500 units (the "Allotted Units") of the Stock Option to the Subscriber as of October    , 2017 (the "Allotment Date").  The remaining balance of 25,000 units agreed to be issued to the Subscriber per his employment contract will be issued as part of the 2nd issue of stock option.

    1.2. The terms and conditions of the Stock Option shall be as set out in Schedule 1 (hereinafter referred to as the "Terms") attached hereto.

2. **Exercise of the Stock Option.**

    2.1. Stock Options shall be exercised by filling out a stock options exercise request form as designated by the Company with the required information, placing Subscriber's name and seal or signature thereon, and submitting such form to the Company's relevant office or division.

    2.2. Together with the submission of the stock options exercise request form in the preceding paragraph, the Subscriber shall pay, in cash (Japanese Yen), the total amount obtained by multiplying the number of units of the Stock Options to be exercised, with the amount to be paid in upon the exercise of each Stock Option, into the account of the financial institution provided in the Paragraph 17 of the Terms.

    2.3. Upon the issuance of the shares of the Company by the exercise of the Stock Option, the Subscriber shall enter into an agreement that includes the provisions set out in Schedule 2 with a party or parties designated by the Company as of the date of the payment, pursuant to the preceding paragraph.

    2.4. Notwithstanding the provisions set forth in this Agreement and the Term, the Subscriber shall exercise the Stock Options within the period from the day on which two years have elapsed from the date of the BOD Resolution until the day on which ten years have elapsed from the date of the BOD Resolution.

*MR*

Ex. 4

2.5. The total amount paid in by the Subscriber upon exercise of the Stock Options for one calendar year shall not exceed JPY 12,000,000. However, if the amount specified in Article 29-2, Paragraph 1, Item 2 of the Act on Special Measures concerning Taxation is amended, the maximum amount above shall be changed to the amended amount thereof upon the implementation date of the amended Act on Special Measures concerning Taxation, which includes the amendment thereof.

2.6. The delivery of the shares acquired by the exercise of the Stock Options shall not infringe the resolved matters for the delivery, which are specified in Article 238, Paragraph 1 of the Companies Act.

2.7. Notwithstanding the provisions set forth in this Agreement and the Term, in the event of the Subscriber's death, termination of employment, or inability to exercise the Stock Options for any other reason before his actually exercising the Stock Options, the Subscriber or the inheritor(s) of the Subscriber may exercise the Stock Options in accordance with this Agreement and the Terms. In the event that the Subscriber or his inheritor(s) are not able to enjoy the full benefits having been granted to the Subscriber for any reason, the Company shall discuss in good faith with the Subscriber or his inheritor(s) and take all reasonable actions for the Subscriber or his inheritor(s) to enjoy such full benefits to the extent permitted by applicable laws.

**3.     Change of Control Transaction.**

Notwithstanding the provisions of this Agreement and the Terms, if shareholders that own a majority of the outstanding shares of the common stock of the Company make a request provided in Paragraph 12, Item (5) of the Terms, and the Subscriber exercises the Stock Option, the Subscriber shall sell all of the shares of the Company obtained upon such exercise of the Stock Option to a purchaser provided in the aforementioned Item of the Terms or otherwise participate in a transaction provided in the same Item.

**4.     Entries or Records of Book Entry Shares.**

Immediately after the acquisition of the shares by the exercise of the Stock Options, the Subscriber shall have said shares entered or recorded in a book-entry transfer account register of a Financial Instruments Business Operator, etc. who is separately designated by the Company through the Company, or shall entrust the custody or management, etc. of said shares with business office or other office of the said Financial Instruments Business Operator, etc., in accordance with Article 29-2, Paragraph 1, Item 6 of the Act on Special Measures concerning Taxation and other provisions of relevant regulations.

**5.     Restriction on Exercise of the Stock Options.**

5.1. Notwithstanding the provisions of this Agreement and the Terms, if any of the following events befalls the Subscriber, the Subscriber shall not exercise the Stock Options after the timing stipulated below and Subscriber shall be deemed to have forfeited, as of such timing, all of the Stock Option unexercised by then:

(1) In cases where the Subscriber breaches any provision of this Agreement with the intent to forfeit his shares: At the time of occurrence of such breach;

MR

(2)  In cases where the Subscriber, without obtaining prior written approval by the Company, becomes, whether paid or unpaid, director, officer, employee, representative, contractor, counsel, or consultant (the "Position") of a company except for government space agency and any of the Company's Affiliates (an "Affiliate" means a subsidiary stipulated in the Ordinance on Terminology, Forms, and Preparation Methods of Financial Statements, etc. of Japan or a related company stipulated in the same ordinance (hereinafter the same)) that is a competitor of the Company or its Affiliates: At the time when the Subscriber assumes the Position.

5.2.  If exercise of the Stock Option by the Subscriber or its assignee is prohibited or filing obligation or another similar obligation is imposed on the Company upon such exercise due to the laws and regulations of the country or region where the Subscriber or its assignee resides, Subscriber shall be deemed to have forfeited, as of such timing, all of the Stock Option unexercised by that time.

6.  **Prohibition of Transfer.**

Other than the automatic transfer of the Stock Options to Subscriber's inheritor(s) upon the Subscriber's death, the Subscriber may not assign, pledge, mortgage or otherwise dispose of any of the Stock Options to any third party.

7.  **Compliance with Applicable Laws and Regulations.**

7.1.  The Parties hereby confirm that the Company provided notice regarding Article 242, Paragraph 1 of the Companies Act of Japan.

7.2.  The Company and the Subscriber hereby confirm that notice from the Company to the Subscriber under Article 243, Paragraph 3 of the Companies Act of Japan has been completed.

7.3.  In the sale of shares obtained upon such exercise of Stock Options, the Subscriber shall comply with the Financial Instruments and Exchange Act, the Companies Act, taxation laws and all other applicable laws and regulations of Japan, as well as all internal rules of the Company.

8.  **Taxes and Expenses.**

The Subscriber shall bear all taxes and public charges imposed, and all other expenses incurred, in connection with any allotment or exercise of Stock Options or any sale or other disposal of shares obtained upon the exercise of Stock Options.

9.  **Demand for Purchase of the Stock Options.**

The Subscriber shall in no event exercise the right to demand purchase of the Stock Options stipulated in Articles 118, 777, 787 and 808 of the Companies Act of Japan.

10.  **Amendment of this Agreement.**          MR

- 4 -

10.1.    After the execution of this Agreement, in case of revision or other change to the relevant laws and regulations such as the Companies Act and the Act on Book-Entry Transfer of Company Bonds, Shares of Japan, and the amendment of the Company's articles of incorporation, or other similar changes, and if the Company deems the amendment of this Agreement as necessary, the Company may amend this Agreement by providing notice of the details of such modification to the Subscriber and obtaining Subscriber's written consent to the modification.

10.2.    Further to the preceding paragraph, if the Company implements a merger, corporate demerger or there is a reasonable ground, the Company, pursuant to the resolution of the Company's board of directors, may amend this Agreement by providing notice of the details of such modification to the Subscriber and obtaining Subscriber's written consent to the modification.

**11.    Handling of Matters Not Specified Herein.**

Any matters not specified in this Agreement shall be handled through good faith consultations between the Parties.

**12.    No Assignment.**

Neither Party shall, directly or indirectly, assign, transfer or otherwise dispose of any of its rights or obligations hereunder without the prior written consent of the other Party.

**13.    Language.**

This Agreement shall be prepared in English, which shall be translated into Japanese as necessary. If there is any discrepancy between the Japanese and the English versions, the English version shall prevail.

**14.    Governing Law and Dispute Resolution.**

This Agreement shall be governed by and construed under the laws of Japan. All disputes and litigation arising out of or related to this Agreement will be subject to the exclusive jurisdiction of the Tokyo District Court.

(*intentionally left blank*)    MR

- 5 -

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed the day and year first above written.

**The Company**

ispace, inc.

By: _____
      Name:   Takeshi Hakamada
      Title: Chief Executive Officer

**The Subscriber**

By: _____
      Name:   Mohamed Ragab

- 6 -

Schedule 1

## Terms and Conditions for Stock Options

1. Name of Stock Options        1st Issue of Stock Option

2. Number of Stock Options      49,700 units at most

3. Details of the Stock Options

    The class and the number of shares which are covered by the stock options shall be one (1) share of the common stock of ispace, inc., a Japanese joint stock corporation (*kabushiki kaisha*) (the "Company").
    On and after the allotment date of the stock options, where the Company conducts a share split (including allotment of shares without contribution (hereinafter the same)), or reverse-share split of common stock, the number of shares which are covered by the stock options shall be adjusted by the following formula and any fractions falling short of one (1) shares as a result of the adjustment shall be rounded down.

$$\text{Number of Shares after adjustment} = \text{Number of shares before adjustment} \times \text{Ratio of share split or reverse-share split}$$

    The number of shares after the adjustment shall be applied on and after the date set forth in Paragraph 5, Item (2), Subparagraph (i).
    In addition to the above, on and after the allotment date of the stock options, in case of any event which requires an adjustment of the number of shares covered, the adjustment shall be made, within a reasonable extent by the Company.
    In the case of an adjustment of the number of shares covered, the Company shall notify the holder of each of the affected stock options recorded in the registry of stock options or give public notice by one (1) day prior to the date of the effectiveness of the number of shares after the adjustment.  However, where the Company is unable to issue a notice or to give public notice by the aforementioned time, it shall issue a notice or give public notice promptly thereafter.

4. Amount to be Paid in Upon Exercise of Each Stock Option

    The amount to be paid in each stock option upon the exercise thereof shall be the amount obtained by multiplying the amount to be paid in upon exercise of each stock option (the "Exercise Price") and the number of shares covered by each stock option.
    The Exercise Price shall be JPY 1,000 and adjusted based upon the formula set forth in Paragraph 5.

5. Adjustment of the Exercise Price

    (1) After the allotment date of the stock options, where the Company conducts the following, the Exercise Price shall be adjusted by the following formula (the "Exercise Price Adjustment Formula"), and any fractions falling short of one (1) yen as a result of the adjustment shall be rounded up.

        (i) In case where the Company conducts a share split or reverse-share split:

MR

- 7 -

$$\text{Exercise Price after adjustment} = \text{Exercise Price before adjustment} \times \frac{1}{\text{Ratio of share split or reverse-share split}}$$

(ii) In case where the Company issues common stock, or disposes of the treasury shares of the common stock (excluding the disposal of the treasury shares set forth in Article 194 of the Companies Act of Japan), at a value that is less than the market price:

$$\text{Exercise Price after adjustment} = \text{Exercise Price before adjustment} \times \frac{\text{Number of issued shares} + \frac{\text{Number of new shares to be issued} \times \text{Amount to be paid-in per share}}{\text{Market price}}}{\text{Number of issued shares} + \text{Number of new shares to be issued}}$$

   A) In the Exercise Price Adjustment Formula, the "Market price" shall be the price stipulated below:
   (a) On and before the date on which the common stock of the Company is listed in one of the stock exchanges in Japan or other countries (the "IPO"):
   Exercise Price before adjustment on a day before the date stipulated in Item (2), on which Exercise Price after adjustment is applied (the "Application Date");
   (b) On and after the date of the IPO:
   The average closing price of the common stock of the Company in the stock exchange where the common stock of the Company is listed (if the number of such stock exchanges is more than one, the most appropriate one will be chosen with regard to the performance of the share, cut rate, and any other circumstances) between 45 business days before the Application Date and 15 business days before the Application Date.
   B) In the Exercise Price Adjustment Formula, "Number of issued shares" shall be the number of shares obtained by adding the number of common stocks that are subject of the issued and outstanding (except for the ones owned by the Company) potential shares ("potential shares" mean convertible shares, redeemable shares, stock options, convertible bonds or other equity securities that can be converted into common stocks of the Company upon the request of the holder or the Company or subject to certain conditions), to the number of issued common stocks on the record date, or, on the day one month prior to the Application Date if there is no record date.
   C) In the case of a disposal of treasury shares, the "number of new shares to be issued" in the Exercise Price Adjustment Formula shall be read as the "number of treasury shares to be disposed."

(2) The Application Date shall be the day set forth below:

   (i) In the case of the adjustment under Item (1) Subparagraph (i), and in case of share split, Exercise Price after adjustment shall be applied after the following day of the record date, or after the date where the share split becomes effective if there is no record date, and in case of reverse share split, Exercise Price after

MR

- 8 -

adjustment shall be applied after the date where the reverse share split becomes effective; *provided, however*, that it shall be retroactively applied from the following day of the record date where the share split shall be effective on the condition that a resolution by which the Company may increase its capital stock and capital reserves by decreasing its profit reserve is approved in the shareholders' meeting of the Company and the record date of such share split is set before the closing of the shareholders' meeting.

In the latter case, the number of the common stocks issued to the stock option holders who exercised the stock options in the period between the following day of the record date and the date where the shareholders' meeting is closed (the number of the shares to be issued in this case shall be the "Number of shares exercised before split" hereinafter), is adjusted by the formula below and any fractions falling short of one (1) yen incurred as a result of the adjustment shall be rounded down.

$$\text{Number of new shares to be issued} = \frac{(\text{Exercise Price before adjustment} - \text{Exercise Price after adjustment}) \times \text{Number of shares exercised before split}}{\text{Exercise Price after adjustment}}$$

(ii) In the case of the adjustment under Item (1) Subparagraph (ii), Exercise Price after adjustment shall be applied after the following day of the record date, or, if there is no record date, the following day of the due date of payment or the final day of the paying period with regard to the issuance or the disposal.

(3) Other than the cases set forth in Item (1), Subparagraph (i) and (ii), in the case of any events necessitating similar adjustments of the Exercise Price after the allotment date of the stock options, such as a merger where the Company is a surviving company or a corporate demerger where the Company becomes the successor company, the Exercise Price shall be appropriately adjusted within a reasonable extent by the Company.

(4) In the case of an adjustment of the Exercise Price, the Company shall notify the stock option holders or give them public notice of the required information up to one (1) day prior to the Application Date. However, where the Company is unable to issue a notice or to give public notice by the above time, it shall issue a notice or give public notice promptly thereafter.

6. Period in which the Stock Options may be Exercised

   From October      , 2017 to October      , 2027

7. Matters Concerning Stated Capital and Capital Reserves to be Increased Where Shares are Issued Through the Exercise of the Stock Options

   (1) The amount of stated capital to be increased where shares are issued due to the exercise of the stock options shall be 1/2 of the maximum amount of the increase in the stated capital to be calculated pursuant to Article 17, Paragraph 1 of the Company Accounting Regulations of Japan, and any fractions falling short of one (1) yen as a result of such calculation shall be rounded up.

*MR*

- 9 -

(2) The amount of capital reserve to be increased where shares are issued through the exercise of the stock options shall be the amount obtained by reducing the amount of stated capital to be increased calculated in accordance with Item (1) above from the maximum amount of the increase in the stated capital set forth in Item (1) above.

8. Restriction on Acquisition of Stock Options by Transfer

   Acquiring the stock options by means of transfer shall require the approval of the board.

9. Terms and Conditions of Compulsory Redemption of the Stock Options

   If any one of the following events occurs, on the date after such event separately set forth by the board of directors, the Company may compulsory acquire without consideration all or a part of the unexercised stock options owned by the stock option holder (in the case of Item (1), all stock option holders) by the time.
   (1) Where the shareholders' meeting (the director(s) (the board of directors, where the approval of the shareholders' meeting is not required) of the Company approves a resolution of:

       (i) A merger agreement in which the Company becomes the merged company;

       (ii) A corporate demerger agreement or a corporate demerger plan in which the Company becomes a demerging company;

       (iii) A share exchange (*kabushiki kokan*) agreement or a transfer shares (*kabushiki-iten*) plan in which the Company becomes a wholly-owned subsidiary;

       (iv) Amendment of the articles of incorporation of the Company where terms and conditions of all of the class of shares underlying the stock options will be amended so that the Company has a right to compulsory redeem all of such shares upon a resolution of a shareholders' meeting;

       (v) Demand for compulsory share purchase by a special controlling shareholder of the Company to the other shareholders (and the stock option holders).

   (2) Where it becomes definite that a stock option holder can no longer satisfy the conditions for the exercise of the stock options (or, any of events where a stock option holder can no longer exercise stock options occurs (hereinafter the same)).

   (3) Where a stock option holder passes away.

10. Policy about the Grant of Stock Options in the Event of Reorganization

    If the Company intends to conduct absorption- or incorporation-type merger in which the Company becomes the merged company, absorption- or incorporation-type corporate

*MR*

- 10 -

demerger in which the Company becomes a demerging company, share exchange (*kabushiki kokan*) or share transfer (*kabushiki iten*) in which the Company becomes a wholly-owned subsidiary (all of the above collectively, "Reorganization"), on the Effective Date of the Reorganization ("Effective Date" means, the effective date of the absorption-type merger with regard to absorption-type merger, the incorporation date of the new company with regard to incorporation-type merger, the effective date of the absorption-type corporate demerger with regard to absorption-type corporate demerger, the incorporation date of the new company with regard to incorporation-type corporate demerger, the effective date of the share exchange with regard to share exchange, and the incorporation date of the wholly owning parent company with regard to share transfer (hereinafter the same)), the stock option shall cease to exist, and the Company shall, in each case, grant to the holders of the stock option remaining at the time immediately before the Effective Date (the "Remaining Stock Options"), new stock options in the applicable companies listed in Article 236, Paragraph 1, Item 8, sub-items (a) through (e) of the Companies Act of Japan (the "Reorganized Company"), subject to the following conditions. However, such grant of the new stock options shall occur only in the case where the relevant absorption- or incorporation-type merger agreement, absorption-type corporate demerger agreement, incorporation-type corporate demerger plan, share exchange agreement or share transfer plan, as the case may be, stipulates that stock options in the Reorganized Company shall be granted in line with the following conditions.

(1) Number of stock options in the Reorganized Company to be granted

Each holder of Remaining Stock Options will receive the same number of stock options in the Reorganized Company as the number of Remaining Stock Options held by such holder.

(2) Type of shares in the Reorganized Company subject to stock options

Common stock in the Reorganized Company.

(3) Number of shares in the Reorganized Company subject to stock options

To be determined according to Paragraph 3, by taking into account, among others, the terms and conditions of the Reorganization.

(4) Value of assets to be contributed upon the exercise of stock options

The value of assets to be contributed upon each exercise of stock options granted shall be the amount obtained by multiplying: (i) the amount of payment after Reorganization, which shall be obtained through the adjustment of the Exercise Price in accordance with Paragraph 4 after taking into account, among others, the terms and conditions of the Reorganization; by (ii) the number of shares in the Reorganized Company subject to such stock options, to be determined according to Item (3) above.

(5) Period during which stock options may be exercised

*MR*

    The period from the latter of: (i) the commencement date of the period during which stock options may be exercised as specified in Paragraph 6 or (ii) the Effective Date of the Reorganization, to the date of expiration of the period during which stock options may be exercised as specified in Paragraph 6 herein.

(6) Rules on increase in capital stock and capital reserves in the event of issuance of shares upon the exercise of stock options

    To be determined according to Paragraph 7.

(7) Restrictions on the acquisition of stock options by transfer

    Any acquisition of stock options by means of transfer shall be subject to approval by a resolution of the board of directors (or the director(s) if the Reorganized Company has no Board of Directors) of the Reorganized Company.

(8) Conditions for the compulsory redemption of stock options

    To be determined according to Paragraph 9.

(9) Conditions for the exercise of stock options

    To be determined according to Paragraph 12.

11. Treatment of Fractions Falling Short of One Share as a Result of the Stock Option Exercise

    Any fractions of a share in the number of shares to be delivered to the stock option holders who exercised the stock options shall be rounded down.

12. Terms and Conditions to Exercise the Stock Options

(1) The stock option holder, who had the status as director, officer or employee of the Company or its subsidiary (the "Status") when the stock options were issued to the stock option holder, may exercise the stock options only if the stock option holder has kept the Status from the issuance to the exercise, and satisfies other terms and conditions to exercise the stock options (and, any of events where the stock option holder can no longer exercise stock options has not occurred (hereinafter the same)); *provided, however*, the stock option holder may exercise, for one (1) year from the day on which the stock option holder loses the Status, the stock options which have become exercisable as of the day on which they lose the Status, as long as the stock option holder satisfies other terms and conditions to exercise the stock options. Even if one (1) year has elapsed since the day on which the stock option holder loses the Status, in the case where the Company gives approval for exercising the stock options to the stock option holders by a resolution of the board of directors, the stock option holder may exercise, until the end of the exercise period set forth in Paragraph 6, the stock options which have become exercisable as of the day on which they lose the Status.

*MR*

(2) In the event of the stock option holder's death while the stock option holder maintains the Status, the inheritor of the stock option holder succeeds the stock option. The inheritor may exercise, for six (6) months after such death, the stock options which are exercisable as of the time of such death, provided that the inheritor keeps satisfying other terms and conditions to exercise the stock options. When there is no inheritor of the stock option holder, the stock options unexercised by the time of such death shall be treated as being waived.

(3) The stock option holder may not exercise the stock options once the stock option holder waive the options.

(4) Notwithstanding the other provisions in this Terms and Conditions, the stock option holders may not exercise the stock options in the case that they intentionally or by gross negligence breach internal regulations of the Company, or they cause damage to the Company by misconducts, leaks of trade secrets, or other forms of breaching their duty intentionally or by gross negligence. In addition to that, the stock option holders may not exercise the stock options while the Company is investigating on suspicion of the breaches set forth above.

(5) Notwithstanding the provisions from (1) to (4) above, where the Company gives approval of exercising the stock options to the stock option holders by the resolution of the board of directors, the stock option holders may exercise the stock option according to the resolution.

13. Amount to be Paid for the Issuance of Stock Options

No cash payment is required for the issuance of the stock options.

14. Allotment Date of the Stock Options

October    , 2017

15. Request for the exercise of and Payment for the Stock Options

(1) The stock option holder may exercise the stock options by filling out the "Request for the exercise of the stock option" as designated by the Company with the required information, placing either name and seal or signature of the stock option holder thereon, and submitting such form to the place stipulated in Paragraph 16.

(2) Along with the submission of the form set forth in Item (1), the stock option holder shall pay the full amount obtained by multiplying Exercise Price by the number of shares covered by each stock option, in cash, to the account stipulated in Paragraph 17 by the time designated by the Company.

16. Place for Handling Request for the Exercise of the Stock Options

The Company's General Affairs Division or other section which is in charge of the operations at the time.

17. Place for Handling Payment of Monies upon the Exercise of the Stock Options

MR

- 13 -

_____Bank or its successor at the time.

18. Treatment of the Replacement or Other Measures in Relation to this Terms and Conditions

    In the event that a provision of this Terms and Conditions is required to be replaced or otherwise, the Company may amend the provision in the way that the Company deems appropriate, pursuant to the substance of the provisions of Companies Act of Japan and the stock option. The amendment above shall constitute this Terms and Conditions.

19. Furthermore, any and all other necessary matters with regard to the stock options shall be determined by the Representative Director of the Company.

*(intentionally left blank)*

*MR*

---

- 14 -

Schedule 2

Provision to be Stipulated

(Prohibition of Transfer.)

Unless abiding by the process stipulated in this agreement, the Subscriber may not assign, pledge, mortgage or otherwise dispose of any of the shares or other equity securities (shares, stock options, bonds with stock options, or any other rights to acquire shares of the Company.  hereinafter the same) that the Subscriber owns to any third party including other shareholder of the Company.

(Change of Control Transaction.)

In case issuance or transfer of shares or other equity securities, corporate reorganization or other transaction to which the Company is a party or where the Company is the target company that will result in a purchaser (and the purchaser's subsidiaries stipulated in the Ordinance on Terminology, Forms, and Preparation Methods of Financial Statements, etc. of Japan, the purchaser's related companies stipulated in the same ordinance, and family members of the purchaser) that shall own the majority of the voting rights of the Company, and if shareholders that own a majority of the outstanding shares of the common stock of the Company request so, the Subscriber shall sell all of the shares and other equity securities of the Company that the Subscriber owns or otherwise participate in such a transaction.

*(intentionally left blank)*          MR